IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JEFFREY FADNESS, | § § § § § § § § § § § § § | |
| *Plaintiff,* | | |
| | | Civil Action No. 1:17-cv-00206-DAE |
| v. | | |
| CHARTER COMMUNICATIONS, INC. | | |
| *Defendant.* | | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

For its Motion for Summary Judgment, Defendant Charter Communications, Inc. respectfully shows the following:

## I.   INTRODUCTION

Plaintiff Jeffrey Fadness brings a *Sabine Pilot* claim against his former employer Defendant Charter Communications, Inc. ("Charter"), alleging that the sole reason for his alleged constructive discharge in December 2016 was his refusal to commit a purported criminally illegal act—namely, to sell Charter's products and services to businesses that displayed a "no soliciting" sign. This claim is absolutely baseless for several reasons, not least of which, is that, as a cable service and telecommunications provider under the Texas Utilities Code, Charter and its employees are in effect statutorily exempt from Texas criminal trespass laws. Furthermore, although some municipalities have passed ordinances pertaining to businesses with "no soliciting" signs, municipalities cannot enact or enforce any law that makes any conduct already covered by

1

the Texas Penal Code a criminal offense.  Thus, try as he may, Fadness's *Sabine Pilot* claim fails at the outset due to the lack of any criminally illegal act.

Fadness also cannot proceed with his *Sabine Pilot* claim because the Texas Supreme Court has not recognized the viability of a constructive discharge theory.  That aside, the undisputed facts do not demonstrate that the circumstances Fadness faced in December 2016 were such that a reasonable person would have no other option but to resign.  Because Fadness additionally articulated resignation reasons unrelated to any request to commit a criminally illegal act, he cannot demonstrate the "sole cause" requirement of his *Sabine Pilot* claim.  For each of these reasons, this Court should grant summary judgment entirely in Charter's favor and award it all costs incurred in the defense of this lawsuit.

## II.   FACTUAL BACKGROUND

Pursuant to Western District of Texas Local Rule CV-7(d)(1), Charter attaches its full Factual Background as Appendix A to this Motion.  However, to aid the Court's review, Charter points out the following undisputed facts:  (1) Plaintiff Fadness, a commercial salesperson and former Account Executive II for Time Warner Cable (TWC), and then after a merger, for Defendant Charter, was at all relevant times employed on an at-will basis; (2) Fadness raised a concern about contacting businesses with "no soliciting" signs in July and August 2016; (3) Gail Kodama, Charter's Vice President of Direct Sales for its West Division sought advice in September 2016 from Ryan Hennings, Charter's Director of Human Resources; (4) Hennings in turn sought advice from Charter's in-house legal department, who responded that there was no legal concern with contacting prospective new businesses in person that displayed "no soliciting" signs in Texas, provided any employee left the premises if asked; (5) Fadness never himself looked into the legality of contacting businesses with "no soliciting" signs until after his resignation; (6) the Texas

criminal trespass statute does not apply to Charter as a cable service and telecommunications provider and prevents any municipal ordinance from so applying; (7) Fadness articulated other reasons unrelated to "no soliciting" signs for his resignation from employment in December 2016; and (8) Fadness never suffered any pay cut, demotion, discipline, or other conduct that can fulfill his heavy burden to demonstrate a constructive discharge.  Although for purposes of this Motion Charter and this Court must accept Fadness's version of any alleged facts as true, these undisputed facts themselves demonstrate that his *Sabine Pilot* claim cannot succeed as a matter of law and must instead be summarily dismissed with prejudice.

### III.    ARGUMENT & AUTHORITIES

**A.     *Sabine Pilot* is a Very Narrow Exception to the Common Law Employment-at-Will Doctrine.**

As a matter of public policy, the Texas Supreme Court has recognized a "narrow exception" to the common law employment-at-will doctrine. That exception arises only when an employee is terminated solely because the employee refused to perform a criminally illegal act.[1] *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733,735 (Tex. 1985).  To prove a *Sabine Pilot* wrongful termination claim, a plaintiff must demonstrate the following four elements:

(1) he was required to commit an illegal act that carries criminal penalties;

(2) he refused to commit the illegal act;

(3) he was discharged; and

(4) the sole reason for his discharge was his refusal to commit a criminally illegal act.

---

[1] "We now hold that public policy, as expressed in the laws of this state and the United States which carry criminal penalties, requires a very narrow exception to the employment-at-will doctrine announced in *East Line & R.R.R. Co. v. Scott*.  That narrow exception covers only the discharge of an employee for the sole reason that the employee refused to perform an illegal act.  We further hold that in the trial of such a case it is the plaintiff's burden to prove by a preponderance of the evidence that his discharge was for no reason other than his refusal to perform an illegal act." *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985).

*Id; accord Karna v. BP Corp. North America*, 609 F. App'x 814, 817 (5th Cir. 2015).  Here, Fadness cannot satisfy the first, third, or fourth elements as a matter of law.

**B.     Fadness Cannot Establish the First Element Because Entering Businesses With "No Soliciting" Signs Is Not A Criminally Illegal Act.**

Although Fadness was an at-will employee, *Sabine Pilot* does not apply to this case.  To prove the first element, the illegal act at issue must be **criminally** illegal or stated differently, the illegal act must "actually have subjected [the plaintiff] to criminal penalties."  *Marren v. Stout*, 930 F.Supp.2d 675, 681 n.2 (W.D. Tex. 2013) (Ezra, J.); *see Hancock v. Express One Intern., Inc.*, 800 S.W.2d 634, 636 (Tex. App.—Dallas 1990, writ denied) (affirming summary judgment for employer and refusing to extend *Sabine Pilot* claim to termination of pilot for refusing to fly under conditions violating FAA regulations, which carried only civil penalties).  As explained below, asking Fadness to contact prospective new businesses in person, even those displaying "no soliciting" signs, is not illegal in Texas for employees of telecommunications and cable service providers like Charter.  Consequently, Fadness cannot satisfy the first element of his claim.

**1)     Texas criminal trespass statute does not apply due to specific statutory defense for employees of telecommunications and cable service providers.**

In his Original Petition filed in Texas state court, Fadness referenced the Texas Penal Code as one of the sources supporting his claim of being asked to commit a criminally illegal act with Charter.  In particular, Fadness contends that asking him as an Account Executive II to contact businesses that display "no soliciting signs" in person is tantamount to criminal trespass.  Specifically, Fadness relies upon Texas Penal Code Section 30.05, which is the general Texas criminal trespass statute.  TEX. PEN. CODE § 30.05.  That statute indicates that a person commits a criminal offense "if the person enters or remains on or in property of another . . . without effective consent and the person: (1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so."  *Id.* § 30.059(a)(1) & (2).  What Fadness completely ignores, however, is that

4

this criminal trespass statute includes a specific statutory defense for employees of telecommunications and cable service providers.  TEX. PEN. CODE § 30.05 (e)(2)(A)(ii), (iii). Under the statute, telecommunications and cable service providers are defined in reference to the Texas Utilities Code, and any employees thereof who are performing duties within the scope of their employment are able to avail themselves of this statutory defense.  TEX. PEN. CODE § 30.05 (e)(2)(A)(ii), (iii) & (e)(2)(B); *see* TEX. UTIL. CODE §§ 51.002 & 66.002 (providing definitions for telecommunications and cable service providers).

In this case, Charter is a "telecommunications provider" in accordance with section 51.002 of the Texas Utilities Code.  It specifically qualifies as such because it is a non-dominant carrier of telecommunications services, an interexchange telecommunications carrier, a competitive local exchange carrier, and a specialized common carrier.  *See* TEX. UTIL. CODE § 51.002(10)(iii), (vi), (vii), & (xi); Ex. 1, Kodama Dec. ¶¶ 6-8 (attesting to Charter's status as a telecommunications provider and providing Public Utility Commission documents in support).  Charter is also a "cable service provider" under section 66.002 of the Texas Utilities Code, as it provides "cable service," defined further by reference to a specific federal statute.  *See* TEX. UTIL. CODE § 66.002(2) & (3) (defining "cable service provider" to mean a person who provides cable service and cable service to be defined "as set forth in 47 U.S.C. Section 522(6)).  That federal statute states in particular that "cable service" is "(A) the one-way transmission to subscribers as (i) video programing, or (ii) other programming service, and (B) subscriber interaction, if any, which is required for the selection or use of such video programming or other programming service."  47 U.S.C. § 522(6). Because Charter provides such cable service to residential and commercial customers, it is both a telecommunications and cable service provider under the Texas Utilities Code.  *See* Ex. 1, Kodama Dec. ¶ 9 (attesting to Charter's status as a cable service provider).

Thus, as both a telecommunications and cable service provider, Charter employees, to include Account Executives such as Fadness, are in essence exempt from the state criminal trespass statute if they enter the property of another as long as they are performing a duty within the course and scope of their employment when they do so.  *See* TEX. PEN. CODE § 30.05 (e)(2)(A)(ii) & (iii). Here, there can be no dispute that Fadness and Charter's other Account Executives were and would be acting entirely within their scope of employment when contacting prospective commercial customers as part of their attempts to educate and down the line sell Charter's voice, internet, and cable services.  *See* Ex. 4, Fadness Dep. at 156:17-157:19; Ex. 1, Kodama Dec. ¶10; Ex. 23, Gates Dep. 8:1-14.  Consequently, as a result of a specific statutory defense that applies to Charter and its employees as a telecommunications and cable service provider, Fadness cannot demonstrate that, as a matter of law, he was asked to perform a criminally illegal act.[2]

### 2)     **Municipal Ordinances Relating to "No Soliciting" Signs Do Not Apply Due to Texas Penal Code Statutory Defense.**

Although Fadness was unaware of certain cities having ordinances pertaining to "no soliciting" signs until after his resignation, Fadness nevertheless argues that Charter's alleged requirement to contact prospective commercial customers regardless of displaying "no soliciting" signs also violated various municipal ordinances and would have in that regard exposed him to criminal penalties.  Ex. 4, Fadness Dep. 229:6-11, 231:20-232:1.  That argument, however, does not save his *Sabine Pilot* claim from dismissal.  Simply put, the Texas Legislature prohibits municipalities from enacting or enforcing any law "that makes any conduct covered by [the Texas Penal Code] an offense subject to a criminal penalty."  TEX. PEN. CODE § 1.08; *see also Dallas*

---

[2] Charter also maintains that its Account Executives do not violate the Texas criminal trespass law by contacting prospective businesses in person, regardless of any "no soliciting" signs.  After a diligent search, it does not appear any Texas court has imposed criminal trespass criminal liability based solely on ignoring a "no soliciting" sign on a business.

*Merchant's & Concessionnaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 493 (Tex. 1993) (holding that city ordinance in conflict with a state statute is unenforceable to the extent of such conflict). In other words, because Charter and its employees, as a telecommunications and cable service provider, are in essence exempt from the state's criminal trespass law if performing a duty with the scope of employment, they are also exempt from any municipal ordinance suggesting otherwise. Accordingly, because Charter and its Account Executives like Fadness cannot be subject to any potential municipally imposed criminal penalties[3] for contacting prospective new business accounts that display "no soliciting" signs, Fadness cannot rely on those ordinances to demonstrate he was asked to commit a criminally illegal act.[4]

### C. Fadness Resigned Voluntarily, and Thus, He Cannot Establish the Third Element of his *Sabine Pilot* Claim.

Fadness attempts to argue that he was constructively discharged when his new Sales manager and direct supervisor, Ryan Voigt, allegedly told him that "[he has] to call door-to-door on 30 to 40 businesses a day whether or not they have no soliciting signs," or he "will be terminated for … [l]ike essentially refusing to do the job because that is the job," a claim Charter entirely

---

[3] The following municipalities fell within in Fadness's sales territory, but they either do not have a municipal ordinance addressing "no soliciting" signs or do not have a municipal ordinance that even purports to impose a criminal penalty: Alleyton (no ordinance), Austin (aggressive solicitation ordinance unrelated to "no soliciting" signs, § 9-4-13), Bastrop (civil penalty only in form of revocation of permit, § 4.04.006), Cedar Creek (no ordinance), Coupland (no ordinance), Columbus (a/k/a Hillcrest) (aggressive solicitation ordinance unrelated to "no soliciting" signs, §4.04.005), Eagle Lake (ordinances unrelated to "no soliciting" signs, Art. 4.03), Elgin (ordinances unrelated to "no soliciting" signs, §§ 8-140 to 8-160), Glidden (no ordinance), McDade (no ordinance), Smithville (ordinances unrelated to "no soliciting" signs, Arts. 4.300, 4.400), Taylor (restricts solicitation at residences, not businesses, § 20-9), Thorndale (no ordinance), and Thrall (no ordinance).

[4] Notably, any restriction on Charter's Account Executives would also raise First Amendment implications. The First Amendment, as applied to the states through the Fourteenth Amendment, protects commercial speech from unwarranted government regulation. *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of NY*, 447 U.S. 557, 561-62 (1980). Assuming Fadness's testimony is correct that 95% of businesses have "no soliciting" signs, *see* Ex. 4, Fadness Dep. 83:9-12, prohibitions on such commercial activity are likely an invalid regulation on their face as well as unconstitutional regulations of commercial speech. *Id*; *see also Ex Parte Luehr*, 266 S.W.2d 375, 377 (Tex. Crim. App. 1954) (reversing conviction for violating ordinance prohibiting solicitation at private residences); *Ex Parte Faulkner*, 158 S.W.2d 525, 527 (Tex. Crim. App. 1942) ("[W]e are … unable to find that our legislature has, or may, delegate to the municipality the right to prohibit solicitors from going in and upon private property for the purpose of selling their wares");. Perhaps this is why, after a diligent search, no court has imposed *Sabine Pilot* liability for a possible violation of a municipal ordinance.

disputes.  Ex. 4, Fadness Dep. 212:25-213:11.  However, even assuming for purposes of this Motion that Fadness's contention is true, such is not enough to defeat summary judgment for two reasons.  First, the Texas Supreme Court has clarified that "a firing" is required for an employer to be liable under *Sabine Pilot*, and it has not recognized that a constructive discharge can fulfill that requirement.  Second, although there are Texas appellate courts and some federal courts that have considered *Sabine Pilot* claims based on a constructive discharge theory, those courts have made clear that the plaintiff must show that, after being asked to commit a criminally illegal act and refusing, the job conditions are made so difficult or unpleasant that a reasonable person would have felt compelled to resign.  Those courts also have not allowed a *Sabine Pilot* constructive discharge claim based merely on a request and a refusal to perform a criminally illegal act.  Accordingly, even if this Court were to permit Fadness to rely upon a constructive discharge theory, and accepting Fadness's facts as true, Charter is still entitled to summary judgment.

>    **1)**     **The Texas Supreme Court Has Not Recognized the Viability of a Constructive Discharge Theory in *Sabine Pilot* Cases.**

Texas courts have repeatedly emphasized the narrowness of the exception created by *Sabine Pilot*.  *See, e.g., Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 724-25 (Tex. 1990) (refusing to extend *Sabine Pilot* to an employee who was fired for reporting illegal activities); *Hancock*, 800 S.W.2d at 636 (refusing to extend *Sabine Pilot* for civil penalties and stating that "[i]t is not for an intermediate appellate court to undertake to enlarge or extend the grounds for wrongful discharge under the employment-at-will doctrine.  If such an exception is to be created, the Texas Supreme Court should do so.") (citations omitted).  In fact, due to its limited nature, the Texas Supreme Court has stated as recently as 2012 that the "only conduct made actionable (or punishable) by [*Sabine Pilot*] is conduct which would otherwise have been governed by the employment-at-will doctrine—that is, a firing."  *Safeshred, Inc. v. Martinez*, 365 S.W.3d

655, 664 (Tex. 2012).  In the same case, the Texas Supreme Court further stated that "[a] plaintiff may not bring a *Sabine Pilot* claim immediately after being asked to perform an illegal activity, but must first refuse and be fired."  *Id; accord Peine v. HIT Servs., L.P.*, 479 S.W.3d 445, 449 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (quoting *Safeshred*, 365 S.W.3d at 664).

Thus, contrary to any suggestion otherwise, the Texas Supreme Court has not recognized the availability of a constructive discharge theory in *Sabine Pilot* cases.  In fact, the Fifth Circuit itself affirmed summary judgment in a *Sabine Pilot* case in 2015 based in part on this lack of recognition.  *See Karna v. BP Corp. N. Am., Inc.*, 609 F. App'x 814, 818 (5th Cir. 2015) (agreeing there was no triable material fact issue in *Sabine Pilot* case because "[f]irst, Karna relies on a constructive discharge theory that Texas courts have never recognized.").  Consequently, given the absence of binding authority permitting a constructive theory to be substituted in place of "a firing," this Court should decline to accept Fadness's invitation to expand and extend the narrow *Sabine Pilot* exception to the Texas common law employment-at-will doctrine.

### 2) Fadness's Circumstances Do Not Amount to a Constructive Discharge as a Matter of Law.

The few state and federal cases that have considered whether a plaintiff can prove a *Sabine Pilot* claim by constructive discharge have made clear that a plaintiff can only do so "when job conditions are made so difficult or unpleasant that 'a reasonable person in the employee's position would have felt compelled to resign.'"  *Karna*, 609 F. App'x at 817-18 (quoting *Hammond v. Katy Indep. Sch. Dist.*, 821 S.W.2d 174, 177 (Tex. App.—Houston [14th Dist.] 1991, no pet.)); *see also Marx v. Elec. Data Sys. Corp.*, 418 S.W.3d 626, 631 (Tex. App.—Amarillo 2009, no pet.) (affirming summary judgment for the employer in a *Sabine Pilot* case).  They also have made it clear that a plaintiff cannot move forward with a constructive discharge theory if the only difficult or unpleasant preceding work condition is the employer's request, repeated or not, to commit an

9

illegal act. *Karna*, 609 F. App'x. at 818 (citing *Nezat v. Tucker Energy Servs., Inc.,* 437 S.W.3d 541, 547 (Tex. App.—Houston [14th Dist.] 2015, no pet.) and quoting its holding that "this theory does not rise to the level of intolerable work conditions that would support a constructive-discharge claim."). That is the very case here.

According to Fadness, he was first told he was going to have to visit prospective business accounts in person without having made a prior appointment on or about July 8, 2016, and it was on that date that he first indicated to Voigt his refusal to do so. Ex. 4, Fadness Dep. 136:5-7 Although he continued to work for the next two months and, according to him, continued to visit businesses provided they did not display "no soliciting signs," Fadness admits no corrective action was taken against him, nor was he demoted or subject to any pay reductions. Ex. 4, Fadness Dep. 145:22-146:8. His job responsibilities likewise remained the same as other Account Executive IIs, and although his territory had changed shortly thereafter to the TWC-Charter merger, the change was indisputably unrelated to his subsequent objection surrounding "no soliciting" signs. *Id.* at 188:13-16, 189:8-12. Along this line, Fadness further testified that, other than Sales Manager Voigt telling him that going "door-to-door," whether there were "no soliciting" signs or not, was part of the job and that he had to make his sales numbers, Voigt never pressured him or changed his job responsibilities, sales territory, or position. Ex. 4, Fadness Dep. at 186:11-189:12.

Starting on September 8, 2016, Fadness was not at work, and in fact, he never returned to work before he resigned effective December 22, 2016. Ex. 4, Fadness Dep. 183:11-184:7; Ex. 15, Time Detail Report. Instead, Fadness sent an email on the Sunday after Thanksgiving, stating, among other things, that "[i]f indeed door-to-door soliciting, in disregard of businesses' or property owners' requests, is a requirement, I would need to find an alternate position at Charter, [a]nd if this is the case, and there are no alternate positions … **I would have no alternative than to**

**resign**." Ex. 19, Nov. 2016 Email (emphasis added). After a subsequent telephone call with Sales Manager Voigt and Human Resources Business Partner Jametra Shanks, Fadness sent another email citing multiple reasons for his ultimate decision to resign. *See* Ex. 21, Dec. 2016 Resignation Email. According to this latter email sent on December 8, 2016, Fadness's choice was, as he saw it, to either be fired or resign because he was continuing to refuse to commit an alleged illegal act. *See id.* As stated in his email, Fadness chose to resign. *See id.*

Significantly, however, Fadness does not mention anything in either his November 27 email or his December 8 email about any one at Charter ever harassing him or taking any sort of action against him before he went out on leave because he refused to ignore "no soliciting" signs. *See id.* There is also no evidence that anyone at Charter even contacted Fadness while he was out on leave about "no soliciting" signs. Ex. 10, Voigt Dep. 96:19-21. In this regard, there is absolutely no evidence that any negative actions were taken against Fadness in response to his refusal to allegedly commit a crime. *See Marx*, 418 S.W.3d at 634-35 (requiring evidence that the employer, "solely because the employee refused to perform an illegal act, made conditions so intolerable the employee reasonably felt compelled to resign" for constructive discharge in a *Sabine Pilot* case).

Notably, even if Fadness was given the proverbial choice of "be fired or resign," the Fifth Circuit has found such insufficient in and of itself to establish a constructive discharge. *See Peret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336, 339 (5th Cir. 2014) (in cases where an employee is given an ultimatum to quit or be fired, "courts have required something beyond the employee's subjective belief that termination was inevitable."). Moreover, from his December 8 email, it appears the "ultimatum" given by Voigt and Shanks on December 6, albeit denied, was merely to contact prospective businesses in person whether they have "no soliciting signs or not." Ex. 21,

11

Dec. 2016 Resignation Email.  Fadness presents no evidence that he should have felt compelled to resign at that time based on this alleged "ultimatum."  Indeed, he very clearly expressed his intention to resign **before** this alleged "ultimatum" was even made.  *See* Ex. 19, Nov. 2016 Email.  Moreover, he admits he did not even know for certain when he decided to resign whether ignoring "no soliciting" signs would have led to criminal penalties against him. Ex. 4, Fadness Dep. 179:14-180:9, 232:16-233:10, 233:14-234:6.  Notably, in the *Sabine Pilot* context, this Court has previously rejected any attempt to expand the cause of action to include circumstances where the plaintiff merely had a good faith belief that what he was asked to do was illegal.  As this Court stated, "the Court agrees with the majority of Texas state courts that have concluded that *Del Mar* represented an 'unlawful expansion of Sabine Pilot,' which is a narrow, judicially created exception to the employment-at-will doctrine." *Marren*, 930 F.Supp.2d at 681 n.2.[5]

Bottom line, the record here is devoid of any of the typical factors that would support a constructive discharge. *See Microsoft Corp. v. Mercieca*, 502 S.W.3d 291, 312 (Tex. App.—Houston [14th Dist.] 2016, pet. denied, rehearing for pet. filed)  ("Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but a number of factors have been identified as bearing on this inquiry…(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or

---

[5] In *Del Mar*, the court allowed a *Sabine Pilot* case when the employee was terminated for inquiring with the Bureau of Alcohol, Tobacco, and Firearms (ATF) as to whether she was asked to commit an illegal act when her employer directed her to package a semi-automatic weapon for a shipment which she was to label as "fishing gear". *Johnston v. Del Mar*, 776 S.W.2d 768, 769 (Tex. App.—Corpus Christi 1989, writ denied).  Although numerous courts, including this Court, has refused to follow *Del Mar* as an unlawful extension of *Sabine Pilot*, the plaintiff in *Del Mar* contacted the ATF, just as the plaintiff in *Sabine Pilot* confirmed the illegality with the Coast Guard prior to refusing to release the bilge. *Hauck*, 687 S.W.2d at 734. Accordingly, both of these plaintiffs, unlike Fadness, had a good faith belief in the illegality of the conduct at issue.  Fadness never inquired with any municipality as to the purported illegality of the conduct at issue until after his resignation. Ex. 4, Fadness Dep. 179:14-180:9, 232:16-233:10, 233:14-234:6.  Further, even a cursory review of the Texas criminal trespass statute would have brought his attention to the specific defense for telecommunications and cable companies, like Charter; although, in fairness, it should be noted that Fadness's version of the criminal trespass statute attached to his Original Petition has omitted the cable company defense.  *See* Dkt. No. 1-3, Pl.'s Orig. Pet.

humiliation by the employer calculated to encourage the employee's resignation; and (6) offers of early retirement that would make the employee worse off whether the offers were accepted or not."); *see also Parra v. Fedex Freight Servs., Inc.*, A-15-CA-030-SS, 2016 WL 2595114, at *5 (W.D. Tex. May 4, 2016) (no constructive discharge when, among other things, the supervisor used foul language and made a racial slur); *Hammond*, 821 S.W.2d at 177 (no constructive discharge when a teacher was "chewed out," the principal raised his voice at her in front of others, and alleged general "harassment"). Indeed, as the Fifth Circuit has noted, if an employee is on leave for months prior to his resignation, it is "difficult to find that he was subjected to 'working conditions so intolerable that a reasonable person would have felt compelled to resign.'" *Peret*, 770 F.3d at 339 (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004)). In short, even if this Court were to recognize a *Sabine Pilot* constructive discharge theory, Fadness's claim should still be dismissed with prejudice, as the circumstances surrounding his resignation do not rise to the level of a constructive discharge.

**D.     Fadness Had Multiple Reasons For Resigning, and Thus, He Cannot Establish the Fourth Element of his *Sabine Pilot* Claim.**

Fadness's *Sabine Pilot* claim must also fail because refusing to perform an illegal act was not the sole reason for his resignation.[6] In fact, an employer "who discharges an employee both for refusing to perform an illegal act and for a legitimate reason cannot be liable for wrongful discharge." *Richards v. Kmart Corp.*, No. CIV.A. 3:99CV2722-P, 2001 WL 285240, at * 3 (N.D.

---

[6] When reviewing evidence regarding the "sole" reason for termination for summary judgment purposes, "[a] fact may not be inferred from circumstantial evidence that could support multiple inferences if none are more probable than the others." *Peine*, 479 S.W.3d at 452 (affirming summary judgment on *Sabine Pilot* claim as evidence was insufficient to create a fact issue as to whether the employee was terminated solely for failure to perform a criminally illegal act). For instance, not every suggested inference by a plaintiff creates a genuine issue of material fact. *Id.* ("Even when viewing [the employee's] proffered evidence in the light most favorable to him, [his] suggested inference [that refusing to commit an illegal act was the sole reason for termination] is, at best, no more probable than the [employer's] suggested explanation for the emails. Therefore, it is not reasonable and does not create a genuine issue of material fact sufficient to avoid summary judgment.") (citations omitted).

13

Tex. Mar. 19, 2001) (granting summary judgment on a *Sabine Pilot* claim and finding "[c]onstruing all inferences in favor of Plaintiff, the Court concludes as a matter of law that Plaintiff was not fired for his refusal to perform an illegal act"); *see also Peine*, 479 S.W.3d at 449 (finding that plaintiff was fired, at least in part, due to breaching his confidentiality duties to his employer). A plaintiff must therefore prove by a preponderance of the evidence "that his discharge was *for no reason other* than his refusal to perform an illegal act," and this is considered "a very strict standard of causation." *Watkins v. Rolling Frito-Lay Sales, L.P.*, No. 05-16-00367-CV, 2017 WL 2665985, at *4 (Tex. App.—Dallas June 21, 2017, no pet.) (affirming directed verdict for employer on *Sabine Pilot* claim based on employee's failure to prove that termination was solely due to his refusal to commit theft, when there was evidence that he was also terminated for failure to report to work for three days) (emphasis in original).

The Northern District of Texas in *Richards* granted summary judgment for the employer in a *Sabine Pilot* case despite the fact that the plaintiff testified the sole reason for his termination was his refusal to illegally repackage meat. *Richards,* 2001 WL 285240, at *3. In doing so, the district court considered other evidence, such as records from the Texas Workforce Commission and employment applications, where the plaintiff listed reasons for his termination other than the failure to perform an illegal act—absenteeism, his age, and his high salary. *Id.* This Court should do the same here.

Fadness in his deposition testified that the only reason he resigned from Charter was because he was asked to commit an alleged illegal act—ignore "no soliciting" signs displayed by businesses. Ex. 4, Fadness Dep. 212:8-216:21. However, in his November 27 and December 8 emails, which he admitted writing on his own without any direction from anyone with Charter, he clearly laid out other reasons for his resignation—the limitations of his territory size, not being

14

able to sell fiber products anymore, not wanting to cold-call at all irrespective of a "no soliciting" sign, and not wanting to ignore "no soliciting" signs whether criminally illegal or not as being "unprofessional." Ex. 19, Nov. 2016 Email; Ex. 21, Dec. 2016 Resignation Email.  In fact, in his November 27, 2016 email wherein he first expressed his intention to resign, Fadness very explicitly stated, "If there is a requirement that my sales prospecting activity is to be conducted primarily on a door-to-door, cold call, door knocking basis, **I would respectfully decline**."  Ex. 19, Nov. 2016 Email (emphasis added).  Fadness importantly did not qualify this direct statement with any reference to "no soliciting" signs.  *See id.*  Likewise, in his December 8 email, he references geographic territory assignments and the "Ink Wins" protocol as "new policies and procedures" that he—in addition to ignoring "no soliciting" signs—cannot accept and leave him "with no reasonable alternative other than to submit [his] resignation of employment with Charter Communications Spectrum Business." Ex. 21, Dec. 2016 Resignation Email.

Thus, in light of Fadness's own November 27 and December 8 emails, it is clear he resigned for multiple reasons, including the following that had nothing to do with "no soliciting" signs:  (1) not wanting to sell door-to-door, regardless of whether a business had a "no soliciting" sign or not; (2) wanting to sell fiber products, which he could no longer do with team re-alignment that occurred following the TWC-Charter merger; (3) the limitations of the type and number of accounts he could contact in his large, geographic territory; and (4) not liking the "Ink Wins" type of compensation plan.  Ex. 19, Nov. 2016 Email; Ex. 21, Dec. 2016 Resignation Email.  As a result, his later claimed refusal to perform an allegedly criminally illegal act was not, by his own words, the "sole reason" for his resignation of employment.  He therefore cannot satisfy the fourth element of his *Sabine Pilot* claim.

### IV.  CONCLUSION & PRAYER

Fadness cannot sustain his *Sabine Pilot* claim as a matter of law.  As an initial matter, he was not asked to commit an illegal act that would have subjected him to criminal penalties.  Second, he cannot rely on a constructive discharge theory based on the lack of Texas Supreme Court authority permitting him to do so, but even if could, there is no evidence his working conditions were so intolerable following his refusal that he had no choice but to resign.  Third, Fadness resigned for multiple stated reasons, and thus, he cannot demonstrate that the sole reason for his "constructive discharge" was his refusal to commit a criminally illegal act.  Charter accordingly prays this Court grant its Motion for Summary Judgment and dismiss this case in its entirety.  Charter further prays that it be awarded the costs it incurred in defending this lawsuit and all other relief to which it is justly entitled.

Respectfully submitted,

/s/ Christine E. Reinhard
Christine E. Reinhard
Texas Bar No. 24013389
Delilah L. Evans
Texas Bar No.24036991
SCHMOYER REINHARD LLP
17806 IH 10 West, Suite 400
San Antonio, Texas 78257
PH:  (210) 447-8033
FX:  (210) 447-8036
creinhard@sr-llp.com
devans@sr-llp.com

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

On November 15, 2017, a true and correct copy of this document was served *via CM/ECF* on the following counsel of record:

Jeffrey Alan Goldberg
Texas State Bar No. 08075305
The Law Office of Jeffrey A. Goldberg
15303 Huebner Rd, Suite 13
San Antonio, Texas 78248-0983
Telephone:  (210) 690-2200
Facsimile:  (210) 690-0438

/s/ Christine E. Reinhard
Christine E. Reinhard